## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT KNOXVILLE

### MAY, 1998 SESSION

FILED

September 14, 1998

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 03C01-9709-CR-00392 |
| | ) | |
| Appellee | ) | |
| | ) | Greene County |
| vs. | ) | |
| | ) | Honorable James E. Beckner, Judge |
| **TONY MURPHY MCKINNEY,** | ) | |
| | ) | (DUI, Driving on revoked license) |
| Appellant. | ) | |

FOR THE APPELLANT:

MICHAEL A. WALCHER
Assistant Public Defender
1609 College Park Dr., Box 11
Morristown, TN 37813-1618

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

CLINTON J. MORGAN
Counsel for the State
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

C. BERKELEY BELL
District Attorney General

CECIL E. MILLS, JR.
Assistant District Attorney General
109 S. Main St.
Greeneville, TN 37743

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

**OPINION**

The defendant, Tony Murphy McKinney, appeals pursuant to Rule 3, Tennessee Rules of Appellate Procedure, from his judgment of conviction in the Criminal Court of Greene County for driving under the influence, a Class A misdemeanor, and for driving with a revoked license, a Class B misdemeanor. He was ordered to serve one hundred percent of an eleven month and twenty-nine day sentence for DUI and seventy-five percent of a six month sentence for driving on a revoked license. In this appeal, the defendant claims that:

1.    The evidence is insufficient to support his conviction for driving under the influence.

2.    The admission of defendant's statements to the police which were not disclosed in discovery was prejudicial.

3.    The defendant's sentence is excessive.

After reviewing the record before us and the applicable law, we affirm the judgment of the trial court.

At approximately 8:00 p.m. on November 3, 1996, the Greene County Sheriff's Department received two calls concerning the defendant. The first call involved a domestic dispute. In the second call, James Reagan reported that the defendant was driving his pick-up truck while he was intoxicated. Two officers responded in separate cars. When they arrived at the defendant's house, someone in the house told them that the defendant had left in his truck. Furniture and other items were sitting on the front porch. Reagan, who lived next door and who is the father of the defendant's girl friend, spoke to the officers in the yard. He told them that the defendant had been drinking all day and had been driving the truck around the yard spinning the wheels and tearing up the grass. After getting into a dispute with Reagan's daughter, Gwen, the defendant took off in the truck.

As the officers drove off in opposite directions to begin their search, they observed a green and white pick-up truck matching the description given by

James Reagan passing another vehicle in a no-passing zone at the top of a hill. The speeding truck was nearly out of control as it slid into the defendant's driveway and drove around to the rear of the house. Neither of the officers were able to see the driver of the truck. Reagan also observed the truck as it turned in the driveway. From his vantage point, he saw the defendant leave the truck and stagger toward the back steps. He watched as someone in the house came out and helped the defendant into the house.

The officers immediately turned their vehicles around and drove back to the defendant's residence. One officer went to the rear of the house and found that the hood of the truck was very warm. The other officer approached the open front door, and when he was invited inside, he entered and found the defendant sitting on the couch with a beer in his hand. When asked where he had been, the defendant replied, "I've been sitting here on this couch." At trial the officer testified that when he asked the defendant who had been driving the truck, the defendant said, "Nobody, I don't reckon." According to the officer, the defendant's eyes were red, and he became loud and belligerent. The odor of alcoholic beverage was very strong, and when the officer got the defendant to his feet, he staggered and needed help to get to the patrol car. Just before he placed the defendant in the car, someone on the porch asked the defendant to leave the keys to the truck. The defendant took the keys out of his front pocket and gave them to that person. After transporting the defendant to the detention center, the officer advised the defendant of his rights under the implied consent law. The defendant refused to submit to a breathalyser test. When the officer checked the defendant's driving record, he learned that the defendant's license to operate a motor vehicle had been revoked.[1]

The defendant testified on his own behalf. He said that he spent the day hauling junk with his cousin, Scott Liner. Liner drove the truck. When they

---

[1] A certified copy of the defendant's driving record showing the license revocation was admitted into evidence.

3

returned home at about 4:30 p.m., the defendant admitted he became "tipsy." When they were unloading a truck hood, it slipped and hit him on the head. According to the defendant, the blow rendered him unconscious, and when the police came the first time, he was lying on his bed. He said that he did not drive the truck that day. He had, however lent the truck to Ed Woodall who needed to haul some wood. According to the defendant, Woodall returned the truck at about 7:00 p.m. that evening.

Five witnesses corroborated the defendant's version of the events.[2] According to these witnesses, the defendant received a hard knock on the head while he and Scott Liner were unloading some junk. When the officers first came to the house, the defendant was lying on his bed with a cloth on his head. Gwen Reagan said that when she dropped a can of beer onto a glass coffee table, the table broke, and she put it out on the front porch. Ed Woodall and Missy McKinney testified that they had borrowed the truck that evening. Woodall said he saw a deputy's car on the road as he returned to the defendant's house. He admitted he was speeding because he was late for work. He estimated that he was driving at about 55 miles per hour. Woodall said that the steering on the truck was defective and that when he turned into the driveway, the truck skidded sideways. He then gave the keys to Gwen Reagan, and Missy McKinney took him to work in his car. Gwen Reagan denied that she and the defendant had any altercation that day. She said she made no telephone calls to the police. The other witnesses also denied making the call.

On the above evidence, the jury found the defendant guilty of driving under the influence and driving on a revoked license. The defendant now contends that the evidence is insufficient to support his convictions.

---

[2]     Testifying for the defense were Ed Woodall, Missy McKinney, the defendant's sister, Scott Liner, the defendant's cousin, Gwen Reagan, the defendant's girl friend, and Jennifer Long, her sister.

4

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is, whether after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S. Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). Since a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, a convicted defendant has the burden of demonstrating on appeal that the evidence is insufficient. State v, Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining that sufficiency, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992).

The defendant was convicted of two offenses: driving under the influence of an intoxicant and driving while his license was revoked. Under Tennessee law, the state must prove beyond a reasonable doubt that (1) the defendant was under the influence of an intoxicant, (2) while under the influence, the defendant drove or was in physical control of a motor driven vehicle, and (3) that the defendant's action took place "on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large. . . . " Tenn. Code Ann. § 55-10-401 (Supp.1997). To convict a defendant of driving with a revoked license, the state must prove that the person drove a motor vehicle on a public highway at a time his privilege to drive was revoked. See Tenn. Code Ann. § 55-50-504(a)(1) (Supp. 1997).

In this instance, the defendant admitted that he was drunk when the officer arrived at his residence and that his driver's license had been revoked. The defendant does not contest the fact that his truck was driven down a public roadway shortly before the officers arrived to arrest him. Therefore, the sole factual issue is whether the defendant was the driver of the truck. Although the police officers were unable to identify him as the driver, James Reagan testified positively that he saw the defendant drive the truck out onto the roadway. He saw him park the truck on his return and watched as he attempted to stagger into the house. The defense argues that Reagan's testimony is incredible and is outweighed by the testimony of the five defense witnesses. However, questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 833, 835 (Tenn. 1978). In this instance, the jury chose to believe Reagan's testimony and to disbelieve that of the defense witnesses. This court does not reweigh the evidence or determine the credibility of witnesses. Cabbage, 571 S.W.2d at 835.

In addition, the record contains other evidence from which the jury could infer that the defendant was the driver of the truck. When the deputies first arrived at the defendant's residence, they were told that the defendant had left in the truck. Then as the deputies drove away, they observed a truck like the defendant's barrel down the hill and make an out of control turn into the defendant's driveway. They found the defendant's truck parked behind the house. Its hood was very warm, and when the obviously intoxicated defendant was arrested a few moments later, he had the keys in his pocket. The evidence is more than sufficient to prove beyond a reasonable doubt that the intoxicated defendant drove his truck on a public roadway while his license was revoked.

In his second issue, the defendant contends the state failed to disclose an oral statement he made to the officers at the time of his arrest and then

6

entered the statement into evidence at trial. The state argues that the defendant waived the issue by failing to make a timely objection and because the trial court never ruled on the issue. In any case, the state contends, the remark was relatively innocuous and not at all prejudicial. For the reasons discussed below, we find that the defendant is not entitled to relief despite the state's failure to disclose his oral statement.

During his testimony, Deputy Frank Waddell stated that when he asked the defendant who was driving the truck, the defendant responded, "Nobody, I don't reckon." This statement was at odds with the defendant's later testimony that Ed Woodall had borrowed his truck to fetch firewood. Defense counsel did not immediately object. However, once the prosecutor completed his direct examination, counsel requested a bench conference and raised the objection to the trial court. The prosecutor agreed that at the preliminary hearing the officer had testified to only one statement on the part of the defendant. The trial court then stated: 'You're talking about discovery, right? It needs to be provided in discovery. If it isn't, hasn't been, then it should be excluded."

At this point, the bench conference was concluded. During cross-examination, defense counsel read the following portion of the officer's preliminary hearing testimony:

> I went in and Mr. McKinney was sitting on the couch. I asked him where he had been. Nowhere, I've been sitting right here all night. He had a beer in his hand. I said, well, you're under arrest for DUI, and I arrested him.

Waddell agreed that his testimony at the preliminary hearing did not include any statement by the defendant other than "I've been sitting here all night."

We cannot say that the defendant failed to make a timely objection to the undisclosed statement. Although defense counsel did not make a contemporaneous objection, he brought the matter to the attention of the trial court

7

within a very brief period of time.  We also find that the trial court ruled on the matter.  The prosecutor acknowledged that the defense was aware of only one statement, and the trial court correctly found that if the statement had not been disclosed, it should be excluded.  See Tenn. R. Crim. P. 16(a)(1)(A), -(d)(2).[3] Defense counsel did not ask for any relief at that time, and the trial court took no further action.  The defendant raised the issue in his motion for a new trial and argued the matter at the hearing.  After listening to the arguments of counsel, the trial court stated that his instructions to the jury were curative and, as a result, the defendant was not prejudiced.  The record does not include the jury instructions or any discussions between the trial court and the attorneys concerning those instructions.  The defendant bears the burden of preparing an adequate record in order to allow for meaningful appellate review.  State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993); Tenn. R. App. P. 24.  In the absence of an adequate record, the appellate court must presume that the trial court's rulings were supported by the evidence.  State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).  In this instance, the trial judge found that a curative instruction to the jury rendered the admission of the undisclosed statement harmless.  Without the jury instruction, we are unable to conclude that the trial court's determination is erroneous.  Moreover, during cross-examination, defense counsel used the preliminary hearing testimony to impeach the officer's credibility.  Any prejudice from the state's non-disclosure of

---

[3]     Rule 16 requires that the state, upon request of the defendant, disclose
> the substance of any oral statement which the state
> intends to offer in evidence at the trial made by the
> defendant whether before or after arrest in response
> to interrogations by any person then known to the
> defendant to be a law-enforcement officer. . . .

Tenn. R. Crim. P. 16(a)(1)(A).

In addition, the rule provides that:
> If at any time during the course of the proceedings it
> is brought to the attention of the court that a party has
> failed to comply with this rule, the court may order
> such party to permit the discovery or inspection, grant
> a continuance, or prohibit the party from introducing
> evidence not disclosed, or it may enter such other
> order as it deems just under the circumstances.

Tenn. R. Crim. P. 16(d)(2).

the defendant's second statement was minimal and harmless beyond a reasonable doubt.

The defendant also contends that the sentences imposed by the trial court are excessive. We respectfully disagree.

When there is a challenge to the length, range or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Therefore, if the trial court follows the statutory sentencing procedure, makes findings of fact which are adequately supported by the record, considers and properly applies the factors and principles relevant to sentencing under the 1989 Sentencing Act, an appellate court may not disturb the sentence even if it would prefer a different result. State v. Fletcher. 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant has the burden of showing the impropriety of his sentence. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments.

A misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasey, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). The court must determine the percentage of the sentence which the misdemeanant must serve before becoming eligible for certain release programs, and generally, sentencing for misdemeanors ranges between zero and seventy-five percent. Tenn. Code Ann. § 40-35-302(d) (1997). However in DUI convictions, the confinement may extend to the maximum of one hundred percent. State v. Palmer, 902 S.W.2d 391, 394 (Tenn. 1995). The service percentage is to be based on the sentencing principles and the enhancement and mitigating factors. State v. Gilboy,

9

857 S.W.2d 884, 888-889 (Tenn. Crim. App. 1993).  Thus, if warranted by the evidence, the trial court may properly sentence a first time DUI offender to the maximum sentence of eleven months, twenty-nine days at one hundred percent.

In the case before us, the trial court required the defendant to serve 100 percent of the eleven month and twenty-nine day sentence.[4]  In addition to the mandatory license revocation, the court imposed the fine levied by the jury.[5]  For driving on a revoked license, the trial judge imposed the maximum sentence of six months and a $500 fine.  See Tenn. Code Ann. § 40-35-411(e)(2) (1997) and § 50-50-603 (Supp. 1997).  The sentences are to be served concurrently.  The trial court held a sentencing hearing and considered the presentence report, the evidence presented at the hearing, and the appropriate sentencing principles.  Therefore, we review the defendant's sentences with the presumption that the trial court's determinations are correct.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103 and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

---

[4]  We note that the trial court offered the defendant the opportunity to admit himself into an in-patient alcohol treatment program.  Each day the defendant spends in the program will be counted against the eleven months and twenty-nine days he must serve.

[5]  The fine levied by the jury and imposed by the trial court was $1,510.  The DUI statute establishes a maximum fine of $1,500 for a first offense, Tenn. Code Ann. § 55-10-403(a)(1) (Supp. 1997), but "an additional fine of ten dollars ($10.00)" is imposed in DUI cases for the benefit of the Traumatic Brain Injury Fund.  See Tenn. Code Ann. § 68-55-304 (1996).  We commend the trial court for assuring that any such "additional fine" was set by the jury before being imposed by the trial court.  See Tenn. Const. art. VI, § 14.

The trial court found that three enhancement factors were applicable to enhance the defendant's sentences: (1) the defendant has a previous history of criminal convictions or criminal behavior; (8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (16) the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. §§ 40-35-114(1), -114(8), -114(16). The evidence in the record fully supports the trial court's use of these factors.

The defendant's history of criminal convictions and criminal behavior is extensive. Although he was charged with a first offense in this case, his record indicates that he was convicted of driving under the influence in 1989 and 1992. The record also shows convictions for theft and arson, vandalism, public indecency, and resisting arrest in addition to two previous convictions for driving on a revoked license. The defendant failed to appear in court numerous times, and his probation was revoked at least once. The defendant's extensive criminal record and his refusal to abide by the conditions of release into the community are more than sufficient to justify the enhancement of his sentence based on factors (1) and (8).

A preponderance of the evidence also supports the use of factor (16). The defendant chose to drive a vehicle with defective steering while he was intoxicated. The deputy testified that the truck was traveling far in excess of the speed limit when it passed another vehicle at the top of a blind hill in a no-passing zone. As the defendant turned into the driveway, he nearly lost control of the truck. Such behavior on a public highway during the evening hours constitutes circumstances under which there is great potential for bodily injury to a victim.

The trial court found that the defendant lacked the potential for rehabilitation, that maximum sentences were necessary to avoid depreciating the

seriousness of the offenses and to provide an effective deterrent, and that the maximum sentence was the least severe measure necessary to comply with the sentencing principles. See Tenn. Code Ann. § 40-35-103 (1997). The record supports these conclusions. A trial court is required to take into consideration all relevant facts and circumstances in making its sentencing determination. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Therefore, the judge was required to give some weight to the defendant's two prior DUI convictions as well as his other convictions.

We find that the sentence imposed by the trial court is in the best interests of both the defendant and the public. See Tenn. Code Ann. § 40-35-103(1)(A), (B), (C). A lengthy period of incarceration in this instance is required both to avoid depreciating the seriousness of the defendant's criminal behavior and to protect the public from further criminal conduct by the defendant. Although measures less restrictive than confinement have been tried repeatedly, the defendant has demonstrated no inclination to rehabilitate himself. He has continued to abuse alcohol and to disregard the law. The trial court did not err in imposing maximum sentences for both convictions and in ordering the defendant to serve one hundred percent of his DUI sentence and seventy-five percent of his conviction for driving on a revoked license.

We affirm the defendant's convictions and the sentences as imposed by the trial court.

_____
CURWOOD WITT, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

12

_____
JOE G. RILEY, Judge