**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JUNE 1998 SESSION**



FILED

September 29, 1998

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9708-CR-00367 |
| | ) | |
| vs. | ) | Davidson County |
| | ) | |
| **MICHAEL M. TAYLOR,** | ) | Hon. J. Randall Wyatt, Judge |
| | ) | |
| Appellant. | ) | (Second Degree Murder) |
| | ) | |

FOR THE APPELLANT:

**MONTE D. WATKINS**
Attorney at Law
176 Second Ave. N., Ste. 300
Nashville, TN  37201

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**LISA A. NAYLOR**
Counsel for the State
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**VICTOR S. JOHNSON, III**
District Attorney General

**LILA STATOM**
Asst. District Attorney General
Washington Square, Ste. 500
222 Second Ave. N.
Nashville, TN  37201-1649

OPINION FILED:_____

**AFFIRMED**

**CURWOOD WITT, JUDGE**

## OPINION

The defendant, Michael M. Taylor, appeals from the conviction of second degree murder he received in the Davidson County Criminal Court for the killing of Tuesdai Hayes. Taylor is presently serving a 23-year sentence in the Department of Correction. In this direct appeal, he challenges the sufficiency of the convicting evidence, the court's admission of rebuttal testimony of an unsequestered witness, and the length of the sentence imposed. After reviewing the record and the parties' briefs and having heard oral arguments on the issues, we find no error in the proceedings below and affirm the judgment of the trial court.

According to the state's evidence, on December 29, 1995, 21-year-old Tuesdai Hayes went to Gladys Baldwin's house to use Ms. Baldwin's telephone. Ms. Hayes arrived shortly after noon. The defendant, whom Ms. Baldwin knew as a neighbor named "Mike-Mike," arrived thereafter and spoke with Ms. Hayes. Ms. Baldwin could not hear the conversation between the defendant and Ms. Hayes although she observed that its tone sounded friendly. The defendant left, and Ms. Baldwin and one of her children went into a bedroom adjoining the living room. The defendant returned and asked Ms. Baldwin, who was still in the bedroom, if he could use her water to wash his car. Ms. Baldwin refused. The defendant then turned to Ms. Hayes and accused her of having something to do with Ms. Baldwin's refusal to allow him to wash his car. Ms. Hayes responded that the defendant should wash his car at his own home. The defendant told Ms. Hayes to stay out of his business. Ms. Hayes told the defendant he could get his gun and said she had one, too. Three to four seconds later, four to five shots rang out. All of the preceding statements and the gunshots were overheard by Ms. Baldwin. After the shots were fired, Tuesdai Hayes lay fatally wounded in a chair in Ms. Baldwin's living room.

Charles Baldwin, who was sixteen years old, had been outside his

2

mother's home working on a car with his uncle, a neighbor and another Baldwin child. Mr. Baldwin had seen the defendant arrive when the defendant first came to the house. Baldwin left for a time, and after returning he heard shots and saw someone drive away who looked like the defendant from behind. This person was wearing the same coat the defendant had worn earlier that day. Baldwin had not noticed this person arrive; he only saw him leave. Baldwin knew the defendant as a neighbor called Mike-Mike.

The Baldwins' next-door neighbor saw the defendant, whom she knew from the neighborhood, at the Baldwin home two times on December 29 prior to hearing the gunshots.

Doctor Miles Jones, a forensic pathologist, testified that the victim died from three gunshot wounds to the head and one to the arm. Any one of the three shots to the head was fatal.

Law enforcement officers of the Metro Police Department testified that they found no fingerprint evidence and no weapon. However, the eyewitness accounts they received linked the defendant and his vehicle to the crime scene.

The defendant attempted to convince the jury of an alibi defense. The defendant's girlfriend, Keisha Reed, testified that the defendant was at her house at the time of the crimes. The defendant arrived about 12:15 p.m. and did not leave until 3:00 or 3:15 p.m. Ms. Reed denied knowing that the defendant's nickname is Mike-Mike.

Ms. Reed's father, Larry Reed, testified he came home from work for lunch on December 29 and saw the defendant with his daughter. Mr. Reed

3

estimated he normally gets home for lunch before 1:00 p.m., although he might have arrived later on December 29. The defendant was behaving in his usual manner.

As rebuttal evidence to the testimony of Keisha Reed, the state offered the testimony of Carolyn McElrath, the victim's cousin. Ms. McElrath worked with Keisha Reed at Checkers Restaurant in 1996 and heard Ms. Reed refer to her boyfriend as Mike-Mike. Ms. McElrath later saw the defendant at the restaurant and asked him if he was Mike-Mike, which he acknowledged.

Finally, the defendant offered the surrebuttal testimony of Keisha Reed, who denied ever working at Checkers.

The defendant had been indicted for first degree murder, and the jury found him guilty of the lesser offense of second degree murder. He faced a sentence of 15 to 25 years, and the trial court imposed a 23 year sentence. From these determinations, the defendant has filed the instant appeal.

I

First, the defendant alleges the convicting evidence is insufficient to sustain a finding of guilt of second degree murder. We disagree.

When a defendant challenges the sufficiency of the evidence, an appellate court's standard of review is, whether after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule is applicable to findings of

4

guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613;

5

<u>State v. McAfee</u>, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

The defendant attacks the credibility of the state's witnesses based upon inconsistencies between their trial testimony and pretrial statements and inconsistencies between witnesses. Further, the defendant claims the evidence fails to exclude the "obvious, reasonable hypothesis" that a black male other than the defendant came into the Baldwin home and shot Ms. Hayes.

We acknowledge that the testimony of some of the state's witnesses contained inconsistencies. However, it was the duty of the jury as the trier of fact to weigh the evidence and pass on the credibility of witnesses. Unfortunately for the defendant, the jury chose to believe the state's witnesses despite their inconsistencies over the defense witnesses who had their own credibility problems.

Furthermore, we disagree that the defendant's theory that another black male came into the Baldwin home and shot the victim is an "obvious, reasonable hypothesis." On the facts of this case, it is no more than fantasy. There was absolutely no evidence of a black male resembling the defendant being inside or near the Baldwin home. Immediately prior to arguing with and shooting the victim, the defendant asked Ms. Baldwin if he could use her water to wash his car. Ms. Baldwin recognized the defendant and knew his voice. She heard the defendant's voice arguing with the victim and the gunshots that followed. Charles Baldwin recognized the defendant's jacket on the person who left the scene after the shots, and the person wearing that jacket looked like the defendant from behind. These facts and circumstances are strong enough to exclude every reasonable hypothesis other than the defendant's guilt. <u>Crawford</u>, 225 Tenn. at 482, 470 S.W.2d at 612; <u>Jones</u>, 901 S.W.2d at 396.

6

Accordingly, the evidence is sufficient to support the defendant's second degree murder conviction.

## II

In his second issue, the defendant complains about the rebuttal testimony of Carolyn McElrath. At trial, the defendant initially objected to the testimony of Ms. McElrath because she had not been sequestered during the state's and defendant's cases-in-chief. The trial court exercised its discretion and allowed the state to present rebuttal testimony of Ms. McElrath on the issue of whether Keisha Reed had referred to the defendant as Mike-Mike. In the motion for new trial, the defendant alleged the testimony of Ms. McElrath was admitted "in violation of the sequestration rule." On appeal, however, the defendant concedes the trial court was within its discretion in allowing Ms. McElrath to testify about having heard Ms. Reed refer to her boyfriend as Mike-Mike; however, he alleges the state went beyond permissible bounds by eliciting information about a conversation the witness had with the defendant about his nickname.[1] Further, he alleges the trial court failed to take corrective action once this testimony was elicited by giving a curative instruction on the sequestration rule.

Our review of the record leads us to conclude that the defendant is not entitled to the relief he has requested for two reasons. First, he failed to register any objection at trial to the testimony he now claims was erroneously and prejudicially admitted. He also failed to request that the trial court give the instruction he claims would have cured the alleged error. Moreover, he failed to bring these specific complaints to the trial court's attention in his motion for new trial. These failures constitute a waiver of the issue. Tenn. R. App. P. 3(e).

---

[1] The details of this conversation were actually elicited by the defense during cross-examination of Ms. McElrath.

Alternatively, even if the defendant had not waived the issue, we would find no error.  Rebuttal evidence is that which tends to explain or controvert evidence produced by an adverse party.  Cozzolino v. State, 584 S.W.2d 765, 768 (Tenn. 1979).  The decision to admit rebuttal testimony is a matter of discretion for the trial court.  State v. Brown, 795 S.W.2d 689, 695 (Tenn. Crim. App. 1990).  In conducting appellate review of the trial court's decision, we will not reverse it absent a showing of a clear abuse of discretion.  State v. Scott, 735 S.W.2d 825, 828 (Tenn. Crim. App. 1987) (citation omitted).

In the case at bar, the defendant offered evidence through the testimony of Keisha Reed that to her knowledge, the defendant was not known as Mike-Mike.  The rebuttal testimony of Ms. McElrath was offered to prove that Ms. Reed was aware that the defendant was known as Mike-Mike and that the defendant himself acknowledged his nickname.  We see no abuse of discretion in the admission of this testimony.[2]  See State v. Anthony, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992) (sanction of preventing the witness from testifying is a harsh one and a less drastic sanction may be appropriate).  Clearly, the evidence offered by the state on rebuttal directly controverted the defendant's evidence.

We disagree with the defendant's contention that he is entitled to a new trial based upon the absence of  a jury instruction explaining Rule of Evidence 615 and informing the jury that the rebuttal witness's presence in the courtroom prior to her testimony may be considered in assessing her testimony.  See State v. David P. Hendricks, No. 01C01-9407-CR-00255, slip op. at 2 (Tenn. Crim. App., Nashville, Mar. 14, 1995), perm. app. denied (Tenn. 1995).  The defense thoroughly

---

[2]Additionally, the trial court minimized any arguable prejudice to the defendant by allowing defense counsel time to interview Ms. McElrath before she was called to the stand.

cross-examined Ms. McElrath about her degree of kinship to the victim, her presence in the courtroom, and her conversations with family members about matters pertaining to the trial. An instruction would have added little, if any, further value. The state presented strong evidence of the defendant's guilt from several individuals. The admission of the rebuttal testimony affected Ms. Reed's credibility; however, her credibility had already undergone strenuous attack on cross-examination.

The defendant has failed to demonstrate error relative to the rebuttal testimony of Ms. McElrath.

### III

In his final issue, the defendant attacks the length of his 23-year sentence. In determining whether the trial court has properly sentenced an individual, this court engages in a <u>de novo</u> review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our <u>de novo</u> review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. §§ 40-35-210(b), 40-35-103(5) (1997); <u>Ashby</u>, 823 S.W.2d at 168. On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); <u>Ashby</u>, 823 S.W.2d at 169.

In the case at bar, we find the trial court's determination is entitled to the presumption of correctness.

The trial court enhanced the defendant's sentence based upon his previous record of criminal conduct[3] and his employment of a firearm during the commission of the offense.[4] In mitigation, the trial court found that the defendant's youth deprived him of substantial judgment in committing the offense[5] and his mental condition significantly reduced his culpability for the offense.[6][7]

First, the defendant argues that the trial court erroneously applied non-statutory enhancement factors. Namely, he alleges the trial court enhanced his sentence based upon the senselessness, tragedy and violence of the crime. Further, he argues, the trial court announced its intent not to depreciate the seriousness of the crime. We interpret the trial court's comments as explicit acknowledgments of the statutory principles and considerations of sentencing, not as application of impermissible enhancement factors.

In support of this argument, the defendant advances that

---

[3]Tenn. Code Ann. § 40-35-114(1) (1997).

[4]Tenn. Code Ann. § 40-35-114(9) (1997).

[5]Tenn. Code Ann. § 40-35-113(6) (1997).

[6]Tenn. Code Ann. § 40-35-113(8) (1997).

[7]The defendant claims the trial court applied only enhancement factor (9). Further, he claims that the trial court found two additional mitigating factors, lack of a significant prior criminal history and a substantial chance at rehabilitation. The trial court's findings do not bear out the defendant's assertions in this regard. Moreover, the record clearly supports the trial court's non-application of the two additional mitigating factors. This young defendant already had a history of assault and two separate incidents of drug possession. Both are serious crimes in the eyes of this court. Further, we see no substantial prospect of rehabilitation for this defendant; he is already experienced well beyond his years in the criminal justice system and was willing to take the life of another young person over nothing more than water to wash his car.

10

consideration of the nature and characteristics of the offense, Tenn. Code Ann. § 40-35-210(b)(4) (1997), in a length-of-sentence determination renders the mitigating and enhancement factors meaningless in the case of serious felonies because descriptive terms such as senseless, tragic and violent are almost always applicable. The comments of the trial court in the case at bar were that this particular murder, a killing over water to wash a car, was an especially egregious murder. The nature and characteristics of the offense are relevant to the proper weight to be afforded the mitigating and enhancement factors in a length-of-sentence determination; therefore, a trial court may appropriately consider them. See, e.g., State v. George E. Martin, Jr., No. 02C01-9512-CC-00389, slip op. at 14 (Tenn. Crim. App., Jackson, Aug. 18, 1997); State v. Moss, 727 S.W.2d 229, 240 (Tenn. 1986).

Next, the defendant claims the trial court also should have mitigated his sentence because he turned himself in to the authorities,[8] even though the defendant did not ask the trial court to apply this mitigating factor at the sentencing hearing. Any error the trial court may have committed in declining to apply this factor is inconsequential because the factor merits little weight. The evidence of the defendant's assistance to the authorities is minimal. The defendant apparently surrendered only after his name had been broadcast on television as the suspect. The authorities had already discovered the crime scene and its attendant evidence when the defendant came forward. There is no evidence the defendant gave a statement which assisted the authorities or led them to undiscovered evidence.[9] Furthermore, there is some evidence the defendant fled from the neighborhood

---

[8]Tenn. Code Ann. § 40-35-113(10) (1997).

[9]While a defendant is constitutionally privileged not to incriminate himself, he is not privileged to have his sentence mitigated based upon the exercise of constitutional rights.

where the crime took place when an officer looked at him earlier in the day. The defendant has failed to demonstrate that factor (10) was entitled to any significant weight. Cf. State v. Keel, 882 S.W.2d 410, 422 (Tenn. Crim. App. 1994) (defendant not entitled to mitigation under factor (9) for assisting the authorities in uncovering offenses committed by other persons where brief statements given by defendant to law enforcement did not contain new information and defendant recanted portions of statements during his testimony). But cf. State v. Gilboy, 857 S.W.2d 884, 889 (Tenn. Crim. App. 1993) (sentence mitigated because defendant assisted authorities).

Second degree murder is a Class A felony with a sentencing range for Range I offenders of 15 to 25 years. In the absence of mitigating and enhancement factors, the presumptive sentence is the midpoint for a Class A felony. Tenn. Code Ann. § 40-35-210(c) (1997). Where mitigating and enhancement factors are present, the trial court must begin at the presumptive sentence, enhance according to the enhancement factors, and then reduce the sentence as appropriate for the mitigating factors. See Tenn. Code Ann. § 40-35-210(e) (1997). With these principles and the applicable mitigating and enhancement factors in mind, we find that the evidence does not overcome the presumptive correctness of the 23-year sentence imposed by the trial court.

Finding no error in the proceedings below, we affirm the judgment of the trial court.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
JOE G. RILEY, JUDGE


_____
R. LEE MOORE, JR., SPECIAL JUDGE