STATE of Tennessee, Appellee,

v.

John GILBOY, Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

April 21, 1993.

James Roland Reid, Brownsville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, C. Mark Fowler, Asst. Atty. Gen., Nashville, Clayburn L. Peeples, Dist. Atty. Gen., Ted Neumann, Asst. Atty. Gen., Trenton, for appellee.

## OPINION

WHITE, Judge.

This is a direct appeal from the Haywood County Criminal Court pursuant to Rule 3, Tennessee Rules of Appellate Procedure. The appellant, John Gilboy, was acquitted

of three counts of vehicular homicide, but convicted of three counts of the lesser included offense of reckless driving. He contests the court's denial of his motion for judgment of acquittal on two counts of reckless driving. He further challenges the denial of probation and the sentence imposed by the court. We agree with the appellant that the evidence in this case cannot sustain convictions for three separate offenses of reckless driving. Therefore, we reverse the convictions on two of those offenses. Accordingly, we modify the sentence imposed and remand for correction of the judgment.

John Gilboy, a tractor trailer driver from New Jersey, was driving a tanker filled with combustible materials en route to Haywood Chemical Company, Brownsville, Tennessee, on June 19, 1990. At the intersection of a CSX railroad track and Dupree Street in Brownsville, Gilboy collided with a train. A tremendous explosion occurred and three railroad conductors aboard the train died of respiratory arrest due to smoke inhalation and lack of oxygen.

On September 4, 1990, the Haywood County Grand Jury returned two indictments against Gilboy. The first, indictment 1683, charged Gilboy with (1) failing to stop at a railroad crossing in violation of Tennessee Code Annotated Section 55–8–147; (2) possessing an intoxicating beverage while driving or operating a commercial vehicle in violation of federal regulations; (3) failing to stop at a railroad grade crossing when a signal is warning of a train approaching in violation of Tennessee Code Annotated Section 55–8–145; and, (4) possessing more than one driver license while operating a commercial vehicle in violation of Tennessee Code Annotated Section 55–50–401. All four counts were alleged to have occurred on the same day in June, 1990, arising out of the same conduct. The second indictment, 1684, also charged four separate counts occurring on

the same day and arising out of the same conduct. Three of those counts alleged vehicular homicide in violation of Tennessee Code Annotated Section 39–13–209. The fourth alleged reckless driving, a violation of Tennessee Code Annotated Section 55–10–205. Before trial, the court consolidated counts one and three of indictment 1683 with indictment 1684 for trial. The remaining counts of indictment 1683, two and four, were severed for separate trial. Thus, the state proceeded to trial against Gilboy on six separate charges.[1]

After a very thorough and well-tried trial,[2] at which nineteen witnesses, including Gilboy, testified, the court remanded count one of indictment 1683 to the General Sessions Court. Thereafter, the court charged the jury as to the offenses and included the substantive law of vehicular homicide, and of criminally negligent homicide and reckless driving as lesser included offenses.[3] The jury deliberated and announced the verdicts to the court as follows:

Foreman: With regard to Indictment 1683?

. . . . .

We find the defendant guilty.

. . . . .

Of Count Three....
On Indictment 1684 ... we, the jury, find him not guilty.

The Court: All right. With regard to all three counts of vehicular homicide—is that correct?

Foreman: Then we—then on number two—

The Court: All right, the lesser included.... The criminal negligent homicide, the lesser included offense?

Foreman: We find him not guilty....

. . . . .

But on the reckless driving—

. . . . .

1. See footnote 3 *infra*.

2. Because of the nature of the legal issue, we deem it unnecessary to repeat here the testimony of each witness.

3. Evidently the trial judge believed that the reckless driving charge in count four of indict-

ment 1684 was intended as a lesser included charge. He advised the jury to render three verdicts with regard to that four-count indictment.

we find him guilty.

The Court: In all three counts—is that correct?

Foreman: Yes.

The court then restated and the jury confirmed the verdicts. At a separate sentencing hearing, the court imposed the Five Hundred Dollar fine set by the jury and the maximum six month sentence on each count of reckless driving and a fifty dollar fine and the maximum thirty day sentence on the failure to stop count. He ordered the sentences served concurrently. In addition to his attack on the three separate reckless driving convictions, Gilboy challenges the denial of probation.

## I. The Convictions

■ Reckless driving in Tennessee is driving a vehicle in "willful or wanton disregard for the safety of persons or property." Tenn.Code Ann. § 55–10–205(a) (1988 Repl.). The statute's purpose is to punish the act of driving when that driving disregards the safety of persons or property. Thus, an act of driving which disregards the safety of several distinct persons or properties still constitutes one offense of reckless driving under our statute.

■ It is clear from the evidence and the indictment that the state sought to punish Gilboy for one identifiable act, the act of driving his truck into the path of an oncoming train. Yet on the record before us, he stands convicted of three separate offenses, all for the same single act. The double jeopardy clause of the state and federal constitutions will not allow such a result. U.S. Const. amend. V, Tenn. Const. art. 1, § 10.

■ The double jeopardy clause prohibits multiple convictions or prosecutions for identical offenses. Before multiple convictions can stand, it must be clear that the offenses supporting the convictions are

"wholly separate and distinct." *State v. Goins,* 705 S.W.2d 648, 650 (Tenn.1986).

For several years Tennessee courts held that only one homicide conviction could be sustained when deaths result from one automobile accident. The rationale behind those rulings was initially a result of the form of criminal pleading, *Kannon v. State,* 78 Tenn. 386 (1882); *Womack v. State,* 47 Tenn. 508 (1870), but eventually was based on the fiction of a single criminal intent. *Smith v. State,* 159 Tenn. 674, 21 S.W.2d 400 (1929). The *Smith* single-transaction, single-intent theory was discarded by our Supreme Court in *State v. Irvin.* There the court held that the proper focus was on the elements of the given offense rather than on the "fictional 'intent' of the accused." *State v. Irvin,* 603 S.W.2d 121, 123 (Tenn.1980). Thus in a homicide case, in which the statute defined the offense as the "unlawful killing of another," the killing of more than one person justified a conviction for more than one homicide. *Id.* In support of this new position, the court recognized the importance of the nature of the offense [4] and the legislative intent.[5]

Applying *Irvin's* rationale to the case before us leads to the inescapable conclusion that Gilboy's conviction for three separate offenses of reckless driving arising out of one act of driving cannot stand. The reckless driving statute by its own terms provides that the offense is committed by specific driving conduct which disregards the safety of persons or of property. A speeding motorist on a curvy highway does not commit a separate act of reckless driving for each car, person, or parcel of property that he passes. Rather his driving constitutes the offense without respect to the number of victims. Certainly, separate acts of recklessness committed at different times or different locations may be prosecuted separately and may support multiple

---

4. The court quoted a Wyoming case: "As a general proposition ... in crimes against the person, when contrasted with crimes against property, there are as many offenses as individuals affected." 603 S.W.2d at 124 (quoting *Vigil v. State,* 563 P.2d 1344, 1352 (Wyo.1977)).

5. Quoting *State v. Miranda,* the court reasoned that "'the legislature intended that the killing of

each human being, under the circumstances described in the code, would constitute a separate offense'." 603 S.W.2d at 123 n. 1 (quoting *State v. Miranda,* 3 Ariz.App. 550, 416 P.2d 444, 452 (1966)).

convictions, but here where the state charges the defendant with but one act of recklessness—pulling into the path of the train—the fact that the act victimized more than one person does not transform it into separate acts. Were we to hold otherwise, a fourth conviction could be sustained for the significant property damage done to the locomotive, a fifth for the resulting road damage, and so forth.

This conclusion is consistent with the approach taken in a neighboring state. In *Hoag v. State*, 511 So.2d 401 (Fla.App. 1987), the Florida appellate court vacated convictions of four of five counts of leaving the scene of the accident when defendant left the scene of one accident which caused four injuries and one death. The Florida statute punished the failure of a driver of a vehicle to stop at the scene of an accident. Thus, the court reasoned the defendant's failure to stop "constituted but one offense although the accident resulted in injuries to four persons and the death of a fifth." 511 So.2d at 402. Similarly, our reckless driving statute punishes the act of reckless driving. That act constitutes one offense regardless of the number of persons or items or parcels of property it affects.

For these reasons, the multiple convictions against John Gilboy for reckless driving cannot be sustained. We reverse the judgment on two of the three convictions for reckless driving.

## II. The Sentence

The trial court sentenced the appellant to six months incarceration on each of the three reckless driving counts and to thirty days for failure to stop at a railroad crossing. The sentences were to be served concurrently. The judge reasoned that

> [t]he jury ... mitigated to a certain extent with regard to what they did and for that reason I feel like the maximum sentence is deserved in each of these....

Defendant argues that under the Criminal Sentencing Reform Act of 1989 he should have been placed on probation.

■ The Criminal Sentencing Reform Act of 1989 provides that "the appellate court shall conduct a de novo review on the record ... with the presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d) (1990 Repl.). That presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). In conducting our review we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, counsels' argument, appellant's statements, the nature and character of the offense, and the potential for rehabilitation. *Id.* The burden of establishing that the sentence is inappropriate is on the appellant. *Id.*

■ Additionally, our Sentencing Act creates a presumption that certain felony offenders are suitable candidates for probation. That presumption is applicable to especially mitigated or standard offenders convicted of Class C, D, or E felonies who are not "committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation...." Tenn. Code Ann. §§ 40–35–102(5) & (6) (1990 Repl.). This presumption of suitability created for Class C, D, and E standard and especially mitigated offenders, is a rebuttable one, *State v. Hartley*, 818 S.W.2d 370 (Tenn.Crim.App.) *perm. to appeal denied*, (Tenn.1991), which may be overcome by the facts and circumstances of a given case. While not specifically applicable to misdemeanors, its terms are instructive.

Misdemeanor sentencing is controlled by Tennessee Code Annotated Section 40–35–302. That statute requires the court to impose a "specific number of months, days or hours ... consistent with the purposes and principles of [the Criminal Sentencing Reform Act of 1989]," Tenn.Code Ann. § 40–35–302(b) (1992 Supp.), and to determine a percentage of the sentence which the misdemeanant must serve before becoming eligible for certain release programs. *Id.* at (d). The service percentage

is to be based on the sentencing principles and the enhancement and mitigating factors. *Id.* The misdemeanor sentencing statute authorizes the court to place a defendant on probation immediately or after service of a portion of the sentence.

In the case before us, John Gilboy stands convicted of two misdemeanor offenses. Reckless driving, a Class B misdemeanor, *see* Sentencing Reform Notes, Tenn.Code Ann. § 55–10–205 (1992 Supp.), is punishable by a maximum sentence of six months and a five hundred dollar fine. Tenn.Code Ann. § 40–35–111(e)(2) (1990 Repl.). Failing to stop at a railroad grade crossing when a signal is warning of an oncoming train, under Tennessee Code Annotated Section 55–8–145, is a Class C misdemeanor, *see* Sentencing Reform Notes, Tenn. Code Ann. § 55–8–145 (1992 Supp.), punishable by thirty days and a fifty dollar fine. Tenn.Code Ann. § 40–35–111(e)(3) (1990 Repl.). The trial court imposed the maximum sentence for both offenses and denied probation.

Thus, in considering whether the trial court erred in sentencing Gilboy to incarceration, we must consider de novo the evidence presented as well as the sentencing principles and philosophies embodied by the Criminal Sentencing Reform Act of 1989. We must also evaluate the mitigating and enhancing factors that are applicable to this case. Finally, we must examine the sentence in light of the nature and character of the offense and Mr. Gilboy's potential for rehabilitation.

■ Our Sentencing Act recognizes that the purpose of sentencing is to punish defendants in relation to the seriousness of their offense. The sentence should be designed to encourage respect for the law and prevent criminal conduct. Thus, it is necessary for us to consider the effect that the sentence would have on the individual defendant as well as society at large.

■ The philosophy of sentencing recognized in our legislation is that practical fiscal limitations require that confinement be reserved for offenders with long criminal histories who have failed under less restrictive punishments and for offenses which require confinement to avoid depreciation of the seriousness of the crime. The sentence imposed is required to be the minimum necessary to achieve the sentencing purpose.

Turning to the appropriate mitigating and enhancement factors in this case, we find several. First, we find that the appellant's sentence should be enhanced because the "amount of damage to property sustained by ... the victim was particularly great." Tenn.Code Ann. § 40–35–114(6) (1992 Supp.). The explosion caused by the accident caused serious property damage which required community resources to restore. Secondly, we find that the appellant had "no hesitation about committing a crime when the risk to human life was high." *Id.* at (10). The jury found that Gilboy failed to stop his loaded truck at a busy railroad crossing located inside corporate limits. Finally, we find that "the crime was committed under circumstances in which the potential for bodily injury was great." *Id.* at (16). The load Gilboy was carrying was highly combustible, yet he proceeded without stopping at the crossing.

Next, we must determine whether there are mitigating factors present in this case. We find that there are. We find that the appellant, although guilty of the crime, committed the offense "under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct." Tenn.Code Ann. § 40–35–113(11) (1990 Repl.). The trial judge, in sentencing Gilboy, concluded that his conduct was not intentional. We also note Gilboy's attitude toward the offense and cooperation with authorities as mitigating factors in this case. *See* Sentencing Commission Comments, Tenn.Code Ann. § 40–35–113 (1990 Repl.) ("simply because a particular mitigating factor is not specifically listed in this section does not diminish its significance.").

Thirdly, we must assess the nature and character of the offense. John Gilboy recklessly drove his tractor trailer containing combustibles across a railroad track without stopping. That act of driving resulted in severe property loss, death, and

damage and forms the basis for the jury's conclusion that Gilboy drove recklessly and failed to stop at a railroad grade crossing. As a trucker with a special license to drive dangerous vehicles carrying fatal elements, Gilboy had an obligation to exercise his special privilege prudently. The grave consequences of his failure to do so are obvious. Thus, while we acknowledge that reckless driving is far from the most serious criminal offense in our Code, its potential consequences (and actual consequences here) require that it be considered more than a minor traffic infraction.

Finally, it is our obligation to consider John Gilboy's potential for rehabilitation. In doing so we must assess his present attitude and his prior record. His cooperative conduct following the accident, his testimony, and the testimony of his spouse at the sentencing hearing demonstrate that he is amenable to rehabilitation. His prior record from New Jersey, however, causes us some concern.

 First, we note that Gilboy has objected to the admissibility of his driving record as "unreliable hearsay." He challenges that the record fails to comply with the statutory requirements "that the copies be certified and bear some indicia of reliability...." Tenn.Code Ann. § 40–35–209(b) (1990 Repl.). We disagree with this contention. Tennessee Code Annotated Section 40–35–209(b) provides for the admissibility of "reliable hearsay, including, but not limited to, certified copies of convictions or documents [provided that] the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted....." *Id.* The document introduced by the state was an abstract of Gilboy's driving record from New Jersey. This four-page record, admitted as exhibit one to the sentencing hearing, bears a signed certification at the bottom of each page as well as an impression of the New Jersey

seal on each page. Additionally, Gilboy is identified by name, address, and driver license number on each sheet. Each sheet contains the same abstract date, number, and unit number. We conclude that exhibit one satisfies the reliable hearsay requirement of the statute. *State v. Taylor,* 744 S.W.2d 919, 921 (Tenn.Crim.App.1987).[6]

In addition to satisfying the "indicia of reliability" requirement for admissibility, we find that Gilboy was given a "fair opportunity" to rebut the hearsay. The evidence shows that his attorney was given the document prior to the hearing. Further, Gilboy, who is presumably the person most familiar with his own driving record, testified and had ample opportunity to challenge the contents of the driving record.

 This reliable hearsay establishes a history of driving offenses including speeding and driving under the influence of an intoxicant charges spanning a period from 1982 to 1990. While we recognize that Gilboy, who drives for a living, has more opportunity than others to violate the rules of the road, his driving record suggests occasional indifference to motor vehicle laws. We note further that when he lost his New Jersey license for driving under the influence, he moved to Pennsylvania and procured a license there.

We conclude that Gilboy's present attitude reflects amenability to rehabilitation, but his prior record of offenses, and reactions to those offenses, requires that he serve a period of incarceration in order to assure that the very serious nature of this offense is not lost on Gilboy or others. We therefore affirm the sentence imposed on the failure to stop. We affirm the reckless driving sentence of six months but modify the service of that sentence to require that Gilboy serve ninety (90) days in custody at one hundred percent (100%) and the remaining ninety (90) days on probation. We

---

6. Defendant urges that *Taylor* supports his argument challenging the admissibility because the record was not admitted by a witness but proffered by the state. In *Taylor,* this court recognized that reports prepared by agents of the Tennessee Bureau of Investigation, containing "rank hearsay" and "marked and filed as an exhibit [by the court] on its own motion ... were not admissible through the only witness who testified at the sentencing hearing." 744 S.W.2d at 921. This situation is quite different since certified copies are self-authenticating. *See* Tenn.R.Evid. 902(4).

note that at the time of the sentencing Gilboy was unemployed due to injuries sustained in the accident. If he is reemployed the trial court should consider allowing Gilboy adequate opportunity to serve the sentence during periods of vacation so that he can maintain support for his growing family. The case is remanded for the entry of a modified judgment form consistent with this opinion and to allow the court to impose appropriate conditions of probation, including, but not limited to, participation in a safe driving course and community services.

The judgment of the trial court is hereby reversed in part and modified in part. This case is remanded for the entry of further orders not inconsistent with this opinion.

DWYER and TIPTON, JJ., concur.