**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**SEPTEMBER SESSION, 1998**

FILED

October 29, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 03C01-9707-CR-00287 |
| **Appellee** | ) | |
| | ) | **KNOX COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. RAY L. JENKINS, Judge** |
| **CHARLES LEROY WOODS,** | ) | |
| | ) | **(Resisting Arrest, Disorderly Conduct,** |
| **Appellant** | ) | **Public Intoxication)** |

For the Appellant:

**William L. Brown**
706 Walnut Street
Suite 902
Knoxville, TN  37902

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Michael J. Fahey, II**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Randall E. Nichols**
District Attorney General

**Zane Scarlett**
Asst. District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED: _____

AFFIRMED AS MODIFIED

**David G. Hayes**
Judge

## OPINION

The appellant, Charles Leroy Woods, appeals from the Knox County Criminal Court jury verdict finding him guilty of the misdemeanor offenses of resisting arrest, disorderly conduct, and public intoxication. The trial court imposed a sentence of six (6) months with ninety (90) days to be served for resisting arrest and thirty (30) days each for both disorderly conduct and public intoxication. The sentences were to be served concurrently. In his appeal as of right, the appellant challenges the sufficiency of the evidence related to each conviction. Second, he contends the trial court abused its discretion denying his request for full probation ordering him to serve ninety (90) days in the Knox County Jail.

After a review of the record, we affirm the judgments of conviction; the appellant's sentence for resisting arrest is modified.

## BACKGROUND

On the evening of November 11, 1995, Knoxville police officers, Robert Soloman and Kenneth Robertson, responded to a domestic disturbance call at 408 Knox Avenue. The residents of the Knox Avenue address included the appellant, his wife, Rebecca, his sister-in-law, Sandra Bullock, and the appellant's parents, Pauline and Charles Woods, Sr.

The events leading to the police call involved a telephone conversation between the appellant and his brother-in-law, David, who lives in Maynardsville. The appellant is married to David's sister, Rebecca. The appellant had called David to request David's assistance in discouraging Rebecca and her sisters, Sandra and Dora, from "bar hopping." The phone conversation escalated into a heated

2

argument. After threats were made over the telephone, David advised that he would be paying the appellant a visit. Anticipating an altercation, the appellant's wife had her sister, Sandra, telephone the police because she "didn't want to see anybody get hurt."

When the two officers arrived, the appellant was in his residence. Rebecca, Sandra, and Dora were standing in the front yard and the appellant's father, Charles, Sr., was seated in his vehicle which was parked on the street. David was en route from Maynardsville. One of the sisters directed the police to the parked car. Upon approaching the vehicle, the officers observed a gun on the floorboard. With weapons drawn, Charles, Sr., was removed from the car. The officers testified that he "reached in and got the gun, and it was a toy gun."[1] As Mr. Woods was being frisked by the officer, his wife came out of the house and pleaded with the officers not to "mash" her husband in the stomach because "he's sick; he's got everything under the sun wrong with him." Testimony revealed the elder Mr. Woods was 72 years old, that he has cancer and that he had an aneurism which resulted in "a plastic tube in the large artery of his heart. . . fused into the arteries of his legs." Mrs. Woods stated, "I started crying and begging him to please quit before he killed him."

During the commotion, the appellant entered the front yard yelling at the officers to leave his father alone. Witnesses testified the appellant "was really violent. . . in a rage," "was cussin' and kept runnin' his mouth," and that "[h]e was very upset, very rude, intoxicated." Officer Robertson stated the appellant "was screaming at the top of his lungs." Repeatedly, the officers told the appellant to return inside, or they would arrest him. The appellant moved away from the officers, however, no one, including the appellant, went inside.

---

[1] Although vague reference was made to a "**real** gun" which was recovered from Mr. Wood's vehicle after he had been removed from the car, no reference to such weapon was made by Officer Soloman, the principal arresting officer, during his testimony. Moreover, no such weapon was introduced at trial.

None of the witnesses for the State saw the appellant drinking; however, the appellant testified he had one glass of vodka and orange juice. Both officers testified they smelled alcohol on the appellant. Sandra and Dora both testified the appellant appeared "drunk." Another witness, Craig Hamilton, a civilian riding with Officer Soloman, testified that the appellant was irate and appeared intoxicated. Both officers perceived that the appellant was a danger to them.

While Officer Soloman filled out a weapon confiscation report with Charles, Sr., at the front of the vehicle, the appellant continued to argue with the officers about "being heroes" and "to quit harassing his parents." The appellant, his wife, and mother all testified the officers were yelling and cursing them. Again, the officers told the appellant to return inside.

When escorting Charles, Sr., back to the house, the appellant and his mother recounted an incident of Officer Solomon putting the toy gun in the face of Pauline Woods telling her, "this will get you killed, little toy guns like this." This alleged incident sparked the final confrontation between Officer Soloman and the appellant. While eight to ten feet away from Officer Soloman, the appellant stated, "If you'll take the gun and [your] badge off, I'll kick your ass right here in the middle of the street." The appellant and his mother heard Officer Soloman say, "I'm tired of this sh--." Officer Soloman proceeded up the four foot embankment to place the appellant under arrest.

Officer Soloman testified when he went to grab the arm of the appellant that the appellant lunged at him causing them both to fall and roll down the embankment. The appellant was "kicking and fighting" until they stopped rolling at the bottom of the incline. Officer Robertson turned to see the commotion and immediately assisted Officer Soloman in handcuffing the appellant. Officer Soloman

4

testified he attempted to use chemical spray to subdue the appellant, however, the attempt failed. The appellant denied lunging at the officer stating he only tried to avoid the falling down the embankment. The appellant testified the officer used chemical spray on his face and struck him in the head with "something black." After handcuffing the appellant, the officers noticed blood on his forehead later requiring six stitches at the hospital. Neither of the officers were injured. Finally, David arrived at the scene but was quickly sent away by the officers. After the officers had left the scene with the appellant, Sandra, Dora, and Rebecca, the appellant's wife, went "bar hopping" as previously planned.

## I. Sufficiency of the Evidence

The appellant challenges the sufficiency of the convicting evidence with regard to each conviction. When a challenge is made on appeal to the sufficiency of the convicting evidence, this court must adhere to certain well-established principles. First, a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Next, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993). Moreover, this court may not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Viewing the evidence under these criteria, it is this court's responsibility to affirm the conviction if the proof was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, 513 U.S.

1086, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

## A. Resisting Arrest

Within this conviction the appellant avers (1) that there was not credible evidence the appellant intentionally prevented the officers from affecting an arrest (2) that under Tenn. Code Ann. § 39-11-611 his force was justified when the law enforcement officer used greater force than necessary to make the arrest.

The jury found the appellant guilty of resisting arrest pursuant to Tenn. Code Ann. § 39-16-602(a) (1991).[2] In order to obtain a conviction under this statute, the State must prove that the defendant intentionally prevented or obstructed a known law enforcement officer, "from effecting a stop, frisk, halt, arrest, or search of any person, including the defendant, by using force against the law enforcement officer or another." Tenn. Code Ann. § 39-16-602(a). The proof establishes that the appellant "lunged" at Officer Soloman upon placing him under arrest. The appellant rolled down the embankment "kicking and fighting." Various witnesses corroborated these facts. Moreover, the appellant's contention of self-defense was rejected as a decision properly made by the trier of fact. See Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648, 653 (1965); see also Tenn. Code Ann. § 39-11-611(e) (1) and (2) (1991). The proof in the record supports the appellant's conviction for resisting arrest.

## B. Disorderly Conduct

---

[2]Although the appellant challenges his arrest under sufficiency of the evidence, this issue is more properly brought as a challenge to an unlawful arrest. However, Officer Soloman was authorized to arrest the appellant without a warrant for a misdemeanor committed in his presence. See Tenn. Code Ann. § 40-7-103(a)(1) (1995 Supp.); Solomon v. State, 203 Tenn. 583, 315 S.W.2d 99 (1958).

Pursuant to Tenn. Code Ann. § 39-17-305(a)(1) (1991), the State must prove the appellant was in a public place with the intent to cause public annoyance or alarm while engaging in fighting or in violent or threatening behavior, as was charged in count four of the indictment. The evidence presented at trial demonstrated that the appellant was in front of the residence, "screaming at the top of his lungs," "violent," and threatening to fight Officer Solomon. This challenge is also without merit.

### C. Public Intoxication

In order sustain a conviction for public intoxication, this court must find that the proof establishes the defendant was under the influence of an intoxicant in a public place to the degree that he is a danger "to other persons or property; or. . . unreasonably annoys people in the vicinity." Tenn. Code Ann. § 39-17-310(a)(2) and (3) (1991). The appellant and his wife testified he had one drink that evening at dinner. Five other witnesses testified that he appeared intoxicated, while two of them smelled alcohol. Both officers testified they felt he was a danger to themselves and to others. We hold the evidence was sufficient.

### II. Sentencing

Third, the appellant contends the trial judge erred in denying his request for total probation requiring him to serve ninety (90) days in the Knox County Jail. The trial court sentenced the appellant to "the Knox County Penal Farm for a period of six months at a misdemeanor percentage of 75% percent; however, on payment of the costs, all time with the exception of 90 days will be suspended" for resisting arrest, a Class B misdemeanor. For disorderly conduct and public intoxication, both

7

Class C misdemeanors, the trial court imposed the maximum sentence of "30 days in each count at a misdemeanor percentage of 75 percent" with those sentences to be served concurrently with the sentence for resisting arrest.

When a challenge is made to the length or manner of service of a sentence, this court conducts a *de novo* review with the presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption, only applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The record does not reveal that the trial judge considered the principles, purposes, and goals of the Sentencing Act in imposing the sentences. Moreover, the trial judge failed to note the presence or absence of mitigating or enhancing factors in imposing a period of incarceration. Although in misdemeanor cases we have not required that trial judges explicitly list on the record applicable enhancing and mitigating factors, State v. Baggett, No. 03C01-9401-CR-00031 (Tenn. Crim. App. at Knoxville, July 11, 1995), clearly a discussion of those factors would be the better practice for purposes of appellate review.

The alternative sentencing provision of Tenn. Code Ann. § 40-35-104 provides that a misdemeanant, as well as the felon, is entitled to sentencing alternatives. Tenn. Code Ann. § 40-35-104(a) (1995 Supp.). The appellant contends that he should have been granted the sentencing alternative of full probation which requires a separate analysis from that of alternative sentencing. See State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). The defendant has the burden of establishing his suitability for full probation in that probation will "subserve the ends of justice and the best interest of both the public and the defendant." Id. (citing State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1990); see also Tenn. Code Ann. § 40-35-303(b) (1995 Supp.). When deciding suitability for probation,

8

although not controlling, the sentencing court should use the following criteria: (1) "the nature and [circumstances] of the criminal conduct involved," Tenn. Code Ann. § 40-35-210(b)(4); (2) the defendant's potential or lack of potential for rehabilitation, Tenn. Code Ann. § 40-35-103(5); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). See Bingham, 910 S.W.2d at 456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. State v. Fletcher, 805 S.W.2d 785, 788-89 (Tenn. Crim. App. 1991).

Here, the State argues these offenses are serious due to the violence directed toward police officers attempting to diffuse a domestic dispute. Additionally, the State avers that jail time will prevent depreciating the seriousness of the offenses. In considering the denial of an alternative sentence based upon the seriousness of the offense, this court held, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." Bingham, 910 S.W.2d at 454 (citing State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). Furthermore, the nature of the offense must outweigh all factors favoring a sentence other than confinement. Bingham, 910 S.W.2d at 454. In this case, we are unable to conclude that the circumstances of these offenses meet the standard set forth in Bingham and Hartley.

At the sentencing hearing, the appellant maintained his innocence in that his anger was justified considering the mistreatment of his parents. He stated that the officers were giving his father a "hard time" and "six stitches later and $3000 dollars to Billy Brown [his attorney] here we are." The trial court was of the opinion that the

9

appellant had not taken the responsibility for his actions. The State argues that lack of repentance and remorse are appropriate factors to consider in denying probation. State v. Pierson, 678 S.W.2d 905 (Tenn. 1984). We agree with the court denying the appellant probation based upon his lack of remorse.

However, upon *de novo* review, we conclude that, based upon the circumstances presented in the case *sub judice*, modification of the appellant's sentence is necessary. In misdemeanor sentencing, although the defendant is not entitled to the presumption of a minimum sentence, State v. Seaton, 914 S.W.2d 129, 135 (Tenn. Crim. App. 1995) (citations omitted), the sentencing court determines what portion of the sentence must be served in confinement after which the defendant is eligible for certain rehabilitative relief programs. See Tenn. Code Ann. § 40-35-302(d) (1995 Supp.). In so determining, the court should consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d); State v. Palmer , 902 S.W.2d 391, 393-94 (Tenn. 1995); State v. Gilboy, 857 S.W.2d 884, 889 (Tenn. Crim. App. 1993). However, the statutory enhancement and mitigating factors do not have to be the only factors considered by the trial court in determining the appropriate sentence. The court should examine the misdemeanor offense in the light and character of the circumstances of the offense. State v. Brannon, No. 03C01-9508-CR-00233 (Tenn. Crim. App. at Knoxville, Apr. 3, 1996), perm. to appeal denied , (Tenn. Nov. 4, 1996) (citing Gilboy, 857 S.W.2d at 889).

Accordingly, we conclude that the following mitigating factors apply to the appellant's convictions for disorderly conduct and the resulting resisting arrest: (1) "the defendant acted under strong provocation," Tenn. Code Ann. § 40-35-113(2) (1990); (2) "[s]ubstantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense," Tenn. Code Ann. § 40-35-113(3); and (3) "the defendant, although guilty of the crime, committed the offense

10

under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct," Tenn. Code Ann. § 40-35-113(11).  Further, we find that the appellant exhibits a stable work record, although presently unable to work because of recent back surgery, thereby providing familial support for his wife and daughter, Tenn. Code Ann. § 40-35-113(13).   We conclude only one enhancing factor applies to the appellant.  The presentence report includes one prior conviction for simple assault, however, we give this factor little weight because it is a Class A misdemeanor which occurred over ten years ago.  See Tenn. Code Ann. § 40-35-114(1) (1995 Supp.).

Although we do not minimize the gravity of the officers' situation in diffusing a domestic dispute, based upon the enhancing and mitigating factors, the appellant's sentence for the offense of resisting arrest is modified to reflect a sentence of six months with thirty (30) days to be served in the county jail.  This sentence is to run concurrently with the appellant's Class C misdemeanor convictions for disorderly conduct and public intoxication.  The judgment of the trial court in all other respects is affirmed.

This case is remanded for entry of judgment consistent with this opinion.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

11

_____
JOSEPH M. TIPTON, Judge