IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2005

## STATE OF TENNESSEE v. WILLIAM F. CAIN

**Appeal from the Criminal Court for Polk County**
**No. 04-036    R. Steven Bebb, Judge**

_____

**No. E2004-01462-CCA-R3-CD - June 30, 2005**

_____

The Appellant, William F. Cain, was convicted of misdemeanor stalking and sentenced to eleven months and twenty-nine days in the county jail. On appeal, Cain raises two issues for our review: (1) whether the evidence is sufficient to support the conviction and (2) whether he should have received a suspended sentence. After review, the judgment of conviction and sentence are affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Charles M. Corn, Cleveland, Tennessee, for the Appellant, William F. Cain.

Paul G. Summers, Attorney General and Reporter; William G. Lamberth II, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Stephen Crump, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

During the events which gave rise to the prosecution of this case, the Appellant and the victim, Mildred Cain, were involved in divorce proceedings after twenty-one years of marriage. In June of 2002, the victim obtained an order of protection from the Polk County General Sessions Court based upon the Appellant's repeated acts of harassment. However, the harassment continued despite the order. The Appellant would appear in the middle of the night, beating on the doors of the victim's house and, on least one occasion, breaking into the house. These incidents were described as occurring "every night or every other night." As a result of the Appellant's actions, he was arrested on several occasions and found to be in violation of the protection order. The proof established that on more than one occasion after being arrested, the Appellant refused to promise the court that he would not harass his wife again. The Appellant's refusal to make this promise resulted

in his continued detention. After serving approximately ninety days of additional confinement, the Appellant was released after promising not to harass the victim. This promise proved to be hollow.

On January 15, 2004, at approximately 4 a.m., Officer Waters of the Benton Police Department responded to a 911 call at the victim's residence. Upon arrival, the victim informed Waters that the Appellant was beating on the back door trying to get in. Waters did not see the Appellant and left the scene. Approximately thirty minutes later, Waters responded to a second 911 call at the residence. On this occasion, Waters saw the Appellant at the back door, and he arrested him for violation of the protection order. Waters testified that he and other officers had been called to the victim's home "a lot" for violations of the order.

In March 2004, the Appellant was indicted by a Polk County grand jury for one count of stalking. When the case went to trial on May 11, 2004, the Appellant presented no proof. He was convicted as charged and subsequently sentenced to serve eleven months and twenty-nine days in the county jail with thirty percent service before being eligible for work release, furlough, trusty status, or rehabilitative programs. The Appellant filed a motion for new trial along with an amended motion for new trial, which were both denied by the trial court. This appeal followed.

**Analysis**

On appeal, the Appellant raises two issues for our review. First, he contends that the evidence is insufficient to support the verdict, specifically asserting that the State failed to prove an element of the crime, *i.e.*, that the victim was in reasonable fear on the date the crime was committed. Next, the Appellant contends that the trial court imposed an excessive sentence, arguing that the entire sentence should have been suspended conditioned upon a promise to stay away from the victim.

## I. Sufficiency of the Evidence

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with

which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Appellant was convicted of stalking in violation of Tennessee Code Annotated section 39-17-315 which provides in relevant part that "[a] person commits the offense of stalking who intentionally and repeatedly follows or harasses another person in such a manner as would cause that person to be in reasonable fear of being assaulted, suffering bodily injury or death." Tenn. Code Ann. § 39-17-315(a)(1) (2003). As used in the statute, "'[h]arasses' means a course of conduct directed at a specific person which would cause a reasonable person to fear an assault, bodily injury, or death, including, but not limited to, verbal threats, written threats, vandalism, or unconsented-to physical contact[.]" *Id.* at (a)(2)(B). The statute further provides that "repeatedly" refers to two or more separate occasions. *Id.* at (a)(2)(C).

The Appellant asserts that there was no proof presented that the victim "suffered from fear of being assaulted, or suffering bodily injury or death from the [Appellant] on January 15, 2004, being the date charged in the indictment." The indictment recites:

On or about the 15th day of January, 2004, in Polk County, Tennessee, and before the finding of this indictment, did unlawfully and intentionally and repeatedly harass MILDRED CAIN in such a manner as would cause that person, (MILDRED CAIN) to be in reasonable fear of being assaulted, suffering bodily injury or death, contrary to T.C.A. 39-17-315, all of which is against the peace and dignity of the State of Tennessee.

The Appellant acknowledges the victim's testimony at trial that the 2002 order of protection was obtained because of the Appellant's history of mental and physical abuse of the victim and that at the time the victim was afraid of him. Moreover, the Appellant acknowledges the victim's response to the question, "When he comes over in the middle of the night are you afraid of him?" to which she replied, "At times yeah I am." However, the Appellant argues that this statement, in the absence of any other proof of fear on the date charged in the indictment, January 15, is insufficient to support the conviction. We disagree.

The crime of stalking is not committed upon a single, discrete act by the defendant. Instead, the statute, which defines stalking as a criminal offense, contemplates a series of discrete actions amounting to a continuing course of conduct. *State v. Hoxie*, 963 S.W.2d 737, 743 (Tenn. 1998). Stalking is statutorily defined as requiring repeated conduct which refers to two or more separate occasions. *See* Tenn. Code Ann. § 39-17-315(a)(2)(c). Thus, as mandated by the statutory

requirements, the crime of stalking, in this case, did not begin and end on the date of January 15.[1] While it is clear from the evidence that discrete acts of harassment occurred on January 15, the proof also supports additional acts of harassment based upon the Appellant's presence at the victim's residence "about every other night." Moreover, the victim testified that it was fear which motivated her to obtain the protection order and that she was afraid of the Appellant "at times" when he came to her home in the middle of the night. We conclude that the proof is more than sufficient to permit a rational trier of fact to have found that the Appellant pursued a harassing course of conduct which caused the victim to be placed in fear. Accordingly, we conclude the proof is sufficient to support the crime of stalking.

## II. Sentencing

Next, the Appellant challenges the imposition of his eleven month and twenty-nine day sentence. Specifically, he asserts that because he "had already served approximately ninety days under the order of protection . . . [,] [t]he court should have suspended the sentence conditioned upon the [Appellant's] staying away from [the victim]." We disagree.

When an accused challenges the length, range, or manner of sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. The burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

Stalking is a class A misdemeanor. Tenn. Code Ann. § 39-17-315(b)(1). Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302 (2003), which provides, in part, that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). More flexibility is extended in misdemeanor sentencing than in felony sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). In misdemeanor sentencing the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *Id*. at 274.

Although otherwise entitled to the same considerations under the Sentencing Reform Act as a felon, the misdemeanor offender is not entitled to the presumption of a minimum sentence. *State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995) (citations omitted). Rather, in sentencing

---

[1]We would observe that in drafting the indictment, the better practice would have been to allege that the crime was committed between specified dates, or committed at divers dates and times within a given period, as the alleged dates are relevant to the issue of the limitation period for prosecution and a double jeopardy issue, if raised. Nonetheless, failure to do so is not error. *Fonte v. State*, 373 S.W.2d 445, 44 (Tenn. 1963); *State v. Gieck*, 29 S.W.3d 57, 61 (Tenn. Crim. App. 1999). Moreover, charging under a single date does not violate the indictment requirements of Tennessee Code Annotated section 40-13-207 (2003).

the misdemeanor defendant, the trial court shall fix a percentage of the sentence that the defendant must serve in confinement before being eligible for release into rehabilitative programs. Tenn. Code Ann. § 40-35-302(d). The trial court shall consider the sentencing principles and enhancement and mitigating factors in determining the percentage to be served and "shall not impose such percentages arbitrarily." *Id.; see also Troutman*, 979 S.W.2d at 274.

The trial court ordered service of the entire eleven month and twenty-nine day sentence.[2] Thus, we are confronted with the question of whether such a period of incarceration is justified based upon the principles of sentencing and the nature and circumstances of the offense. *See State v. Gilboy*, 857 S.W.2d 884, 889 (Tenn. Crim. App. 1993).

We find nothing in the record which leads us to disturb the trial court's decision regarding the Appellant's sentence. The Appellant relies upon the "important factor" that he has already served approximately ninety days for violation of the order of protection. However, we find this reliance misplaced because even after the Appellant was released from that period of confinement, he continued to harass the victim. This course of action persisted over a period of at least two years on an almost daily basis. He has repeatedly violated orders of protection. The Appellant has failed to demonstrate that he intends to alter this pattern of behavior if his sentence is suspended. Accordingly, based upon the nature and circumstances of the Appellant's actions, we conclude that the trial court did not err in ordering the Appellant to serve his entire sentence in incarceration.

## CONCLUSION

Based upon the foregoing, we affirm the conviction for stalking and the resulting sentence of eleven months and twenty-nine days to be served in incarceration.

_____
DAVID G. HAYES, JUDGE

---

[2] At the sentencing hearing, the trial court pronounced that the Appellant was "to serve 11-29 at 30 percent." The judgment form reflects two inconsistent sentences: (1) a sentence of eleven months and twenty-nine days on probation; and (2) a sentence of eleven months and twenty-nine days in incarceration, with eligibility of work release after service of thirty percent. Based upon the trial court's pronouncement at the hearing, we presume a sentence of incarceration was intended.