# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JUNE, 1997 SESSION

FILED

October 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9611-CR-00416 |
| | ) | |
| vs. | ) | Sullivan County |
| | ) | |
| **KAREN A. DOWNEY**, | ) | Honorable Frank L. Slaughter, Judge |
| | ) | |
| Appellant. | ) | |
| | ) | (Misdemeanor Sentencing) |


FOR THE APPELLANT:

DAVID L. LEONARD (on appeal)
Leonard & Kershaw
128 So. Main St. Ste. 102
Greeneville, TN 37743

FRANK X. SANTORE (at trial)
P.O. Box 113
Greeneville, TN 37744

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

GEORGIA BLYTHE FELNER
Counsel for the State
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

H. GREELEY WELLS, JR.
District Attorney General

JACK LEWIS COMBS, JR.
Assistant District Attorney General
P.O. Box 526
Blountville, TN 37617-0526


OPINION FILED: _____


**Affirmed as modified**


CURWOOD WITT
JUDGE


downeyk.opn

OPINION

The defendant, Karen A. Downey,[1] pleaded guilty in the Sullivan County Criminal Court to one count of theft of property valued at five hundred dollars or less, a Class A misdemeanor. Tenn. Code Ann. § 39-14-105(1). The conviction arose out of a shoplifting incident that occurred on March 29, 1996 in which the defendant took a watch, an ankle bracelet and various earrings and pins, worth $24.41 altogether, from Hill's Department Store. At the conclusion of the sentencing hearing, the trial judge denied probation and sentenced her to serve eleven months and twenty-nine days in the county jail. In this direct appeal, the defendant alleges that the sentence is excessive and that the trial court erred in not granting her probation.

For the reasons discussed below, we affirm appellant's sentence but modify the service of that sentence to require that she serve the entire period on intensive probation.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d)(1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the

_____

[1] In her brief and in some pleadings, the defendant's name is given as "Karan Ann Downey." However, it is the policy of this court to use the name as it appears in the indictment, and the indictment lists the defendant's name as "Karen A. Downey."

evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the appellant's statements, the nature and character of the offense, and the appellant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1990); State v. Ashby, 823 S.W.2d at 169. The defendant has the burden of demonstrating that the sentence is improper. Tenn. Code Ann. § 40-35-210 sentencing commission comments. If the record fails to demonstrate the appropriate consideration by the trial court, appellate review of the sentence is purely de novo. State v. Ashby, 823 S.W.2d at 169. However, if our review reflects that the trial court properly considered all relevant factors and the record adequately supports its findings of fact, this court must affirm the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Randall C. Conner, No. 03C01-9401-CR-00024, slip op. at 6 (Tenn. Crim. App., Knoxville, Aug. 12, 1994); State v. Bernell B. Lawson, No. 63, slip op. at 7 (Tenn. Crim. App., Knoxville, May 23, 1991). Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302. The statue requires the court to impose a "specific number of months, days or hours . . . consistent with the purposes and principles of the [Criminal Sentencing Reform Act of 1989]," Tenn. Code Ann. § 40-35-302(b)(Supp. 1996), and to determine a percentage of the sentence which the misdemeanant must serve before becoming eligible for certain release programs.[2] Tenn. Code Ann. § 40-35-302(d). In determining the percentage, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to

---

[2]    Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. Tenn. Code Ann. § 40-35-302(d).

sentencing. Tenn. Code Ann. § 40-35-302(d); State v. Palmer, 902 S.W.2d 391, 393-94 (Tenn.1995); State v. Gilboy, 857 S.W.2d 884, 888-889 (Tenn. Crim. App. 1993).

The misdemeanor sentencing statute authorizes the court to place a defendant on probation immediately or after service of a portion of the sentence. Tenn. Code Ann. § 40-35-402(e). The trial court maintains jurisdiction over a defendant placed in jail and may reduce or modify the sentence or place the defendant on probationary supervision. Tenn. Code Ann. § 40-35-314(c). The statute is designed to provide a trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. State v. Dwight Johnson, No. 03C01-9209-CR-00328, slip op. at 7 (Tenn. Crim. App., Knoxville, May, 18, 1993), perm. to appeal denied (Tenn. 1994).

In this case, Karen Downey pleaded guilty to a Class A misdemeanor. Theft of property valued at five hundred dollars or less is punishable by a maximum sentence of eleven (11) months and twenty-nine (29) days. Tenn. Code Ann. § 40-35-111(e)(2)(1990). The trial court imposed the maximum sentence and denied probation. Although the record demonstrates that the trial court made findings concerning both enhancement and mitigating factors, we cannot determine from the record whether the trial court gave appropriate consideration to the purposes and principles of sentencing. His denial of probation was conclusory.[3] Therefore, we review the defendant's sentence without the presumption of correctness.

---

[3] The judge said, "Now, two concepts, of being a criminal court judge, one is to punish people who do mean things, and the other is to protect people. In this case I deny probation."

In considering whether the trial court erred in sentencing the defendant, we must consider <u>de novo</u> the evidence presented as well as the sentencing principles and considerations embodied by our sentencing laws. We must also evaluate the mitigating and enhancing factors that are applicable to this case. Finally, we must examine the sentence in light of the nature and character of the offense and Downey's potential for rehabilitation. <u>See</u> <u>State v. Ashby</u>, 823 S.W.2d at 169.

The foremost purpose of sentencing is to promote justice by imposing sentences that are "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102 (1). The sentence should be designed to encourage respect for the law, to prevent further criminal conduct, and to encourage effective rehabilitation where it is reasonably feasible. Tenn. Code Ann. § 40-35-102(3). Courts must consider the effect a sentence will have on the individual defendant as well as on society at large. <u>State v. Gilboy</u>, 857 S.W.2d at 889. Practical fiscal limitations require that confinement be reserved for those with long criminal histories who have failed under less restrictive punishments and for offenses which require confinement to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103 (1). The sentence imposed should be the minimum necessary to achieve the sentencing purpose. <u>Id</u>. at (2).

The record in this case consists of a transcript of the sentencing hearing and exhibits, including the presentence report, the defendant's medical history, and notes from her therapist and psychiatrist. The defendant, her mother, and the defendant's therapist testified at the sentencing hearing. The record discloses that the forty-seven year old defendant was married and divorced twice. Her first husband abused her sexually. She has no children and suffers from a

thyroid disorder and lupus. She has been disabled since 1987 or 1988 when her leg was badly broken in a horseback riding accident. At the time of the sentencing hearing, she lived with and cared for her elderly mother who is in poor health. Her father died two weeks before her last arrest on March 29, 1996. As a result of an arrest in 1991, the defendant became a patient at the Nolachuckey-Holston Mental Health Center in Greeneville, Tennessee, where she has received individual and group therapy and medication on a regular basis through the date of the sentencing hearing.

The clinic diagnosed her as having a mixed personality disorder with borderline traits; major, reoccurring depression that is moderate to severe; alcohol dependence that is in remission; and kleptomania. At the time of the hearing, she was taking prozac, vistaril, and trazodone. Joy White, her therapist, testified that kleptomania is a recognized disorder listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Number 4 Revised (DSM-IV-R). She described kleptomania as an incorrect coping mechanism to which the defendant resorts in times of tension, stress, anxiety and grief. According to her testimony, large doses of prozac had recently been found useful in controlling the impulsive behavior of kleptomaniacs. The psychiatrist was gradually increasing defendant's dosage of prozac, and the therapist reported that she was displaying less impulsive behavior. She recommended a continuing intensive treatment program involving therapy as well as continued medication. She testified that incarceration "won't stop the behavior, if anything it will enhance it .... The problem is psychological ... not physical or practical." Also, the therapist stated that there are "some medical problems involved."

The trial judge found that two enhancement and five mitigating factors apply to the defendant's sentence. The record sustains the trial court's conclusion that the defendant has "a previous history of criminal convictions or criminal behavior." Tenn. Code Ann. § 40-35-114(1). The defendant admitted that she had two prior convictions for shoplifting, one in 1988 and one in 1992. She also admitted to numerous shoplifting incidents throughout her life.[4] The evidence in the record, however, does not support the trial judge's finding that she has "a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." The defendant was placed on probation both in 1988 and in 1992. In 1992, she served 15 days in jail and the rest of her eleven month and twenty-nine day sentence on probation. The trial judge assumed that, since she admitted to many shoplifting incidents in her life, some of them must have occurred when she was on probation. Nothing in the record supports this assumption. She apparently completed her probationary periods without incident.[5]

As mitigating factors, the trial court found that

1.      The defendant's conduct neither caused nor threatened any serious bodily injury. Tenn. Code Ann. § 40-35-113(1).

2.      The defendant suffers from kleptomania, a well-diagnosed psychiatric illness not caused by any misconduct on her part.

3.      The defendant cares for and helps her elderly mother who needs considerable care.

---

[4]      According to her medical records, she told her psychiatrist that she had probably shoplifted one thousand or fifteen hundred times in her life. At the sentencing hearing, she denied making this statement. She said she had stolen many times but not that many.

[5]      The medical records indicate that she was assigned to some kind of community service as result of her 1992 conviction. The record is not entirely clear, but she may have been excused from this portion of her sentence due to her disability and other health problems.

4.      The defendant suffers from depression and has physical ailments including a disability resulting from a kick by a horse.

5.      The defendant had an unfortunate marriage during which she suffered considerable abuse.

The trial judge refused to consider the stressful situation caused by her father's recent death as a mitigating factor because he had died "on or about the time of this offense."   We agree that the defendant's mental and physical condition are significant mitigating factors. Moreover, the therapist testified that stressful events such as death, divorce, and illness could trigger the impulsive behavior that leads to shoplifting, and the death of the defendant's father may well have led to the shoplifting for which she was arrested just two weeks later.   We find that, although the enhancement factor is entitled to great weight, the mitigating factors found by the court  in this case are also of great significance.

Next we must assess the nature and character of the offense.  Karen Downey stole a watch, an ankle bracelet, and a few other pieces of jewelry.  The total value of these items was considerably less than five hundred dollars, and the goods were returned to Hill's Department Store.   Although this incident does not involve a significant loss, the trial court was properly concerned about the defendant's lengthy history of shoplifting that is clearly much more extensive than her two previous convictions would indicate.   The trial court was rightly aware of the need to protect the public from such criminal acts. Tenn. Code Ann. § 40-35-103)(1)(A) (1990).

Finally, we must consider the defendant's potential for rehabilitation. We find that, although she has missed appointments for therapy and has sometimes resisted or denied the need to change, she has persisted in her

treatment program for several years. This persistence indicates that she has the desire to make positive changes and is willing to work to achieve them. Her efforts, unfortunately, have not always been successful. The record indicates that she is in need of consistent structure and intensive counseling as well as close monitoring for her medication. Moreover, the evidence reflects that at the time of sentencing, management of her impulsive behavior was improving because of her therapy and medication regimen.

We conclude that, on the rather unusual facts of this case, a period of incarceration would not serve the purposes of the 1989 Sentencing Act. However, we do not believe that it would be in the best interests of either the public or the defendant to leave the defendant without adequate supervision. Therefore, we affirm the defendant's sentence of eleven months and twenty-nine days but modify the service of that sentence to require that she serve the entire period on intensive probation.[6] Upon remand the trial judge shall impose appropriate conditions of probation, including, but not limited to, continued and consistent participation in individual and group counseling as recommended by her psychiatrist and therapist, strict compliance with the medication ordered by her doctors, and some form of community service that is compatible with her physical disabilities.

---

[6] The trial court's expressed aversion to probation notwithstanding, the court's judgment reflects that no percentage of service of the sentence was indicated. Where no percentage is indicated, the "percentage shall be considered zero percent (0%)." Tenn. Code Ann. § 40-35-302(d) (Supp. 1996). Therefore, according to the terms of the judgment, the "administrative authority" was authorized to place the defendant in an appropriate "rehabilitative program" without the service of any time in jail. Id.

The judgment of the trial court is hereby affirmed in part and modified in part. The case is remanded for the entry of a modified judgment form consistent with this opinion and to allow the court to impose conditions of probation.

_____
CURWOOD WITT, Judge

_____
JOHN H. PEAY, Judge

_____
JOSEPH M. TIPTON, Judge